# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOSEPH BERLINGER,<br>     7940 Amethyst Lake Pt.<br>     Lake Worth FL 33467<br><br>     *Plaintiff*<br><br>     v.<br><br>LIBERTY PROPERTY TRUST<br>     c/o CSC-Lawyers Incorporating<br>     Service Company<br>     7 St. Paul Street<br>     Suite 820<br>     Baltimore MD 21202<br><br>WILLIAM P. HANKOWSKY<br>     c/o Liberty Property Trust<br>     c/o CSC-Lawyers Incorporating<br>     Service Company<br>     7 St. Paul Street<br>     Suite 820<br>     Baltimore MD 21202<br><br>THOMAS C. DELOACH, JR.<br>     c/o Liberty Property Trust<br>     c/o CSC-Lawyers Incorporating<br>     Service Company<br>     7 St. Paul Street<br>     Suite 820<br>     Baltimore MD 21202<br><br>KATHERINE E. DIETZE<br>     c/o Liberty Property Trust<br>     c/o CSC-Lawyers Incorporating<br>     Service Company<br>     7 St. Paul Street<br>     Suite 820<br>     Baltimore MD 21202<br><br>ANTONIO FERNANDEZ<br>     c/o Liberty Property Trust | Case No.:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

c/o CSC-Lawyers Incorporating
Service Company
7 St. Paul Street
Suite 820
Baltimore MD 21202

DANIEL P. GARTON
c/o Liberty Property Trust
c/o CSC-Lawyers Incorporating
Service Company
7 St. Paul Street
Suite 820
Baltimore MD 21202

ROBERT G. GIFFORD
c/o Liberty Property Trust
c/o CSC-Lawyers Incorporating
Service Company
7 St. Paul Street
Suite 820
Baltimore MD 21202

DAVID L. LINGERFELT
c/o Liberty Property Trust
c/o CSC-Lawyers Incorporating
Service Company
7 St. Paul Street
Suite 820
Baltimore MD 21202

MARGUERITE NADER
c/o Liberty Property Trust
c/o CSC-Lawyers Incorporating
Service Company
7 St. Paul Street
Suite 820
Baltimore MD 21202

LAWRENCE D. RAIMAN,
c/o Liberty Property Trust c/o CSC-
Lawyers Incorporating Service
Company
7 St. Paul Street
Suite 820
Baltimore MD 21202

FREDRIC J. TOMCZYK,
      c/o Liberty Property Trust c/o CSC-
      Lawyers Incorporating Service
      Company
      7 St. Paul Street
      Suite 820
      Baltimore MD 21202

        *Defendants*.

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Joseph Berlinger ("Plaintiff"), by his undersigned attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## INTRODUCTION

1.　　Plaintiff brings this action against Liberty Property Trust ("Liberty" or the "Company") and the Company's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a). Specifically, Defendants solicit stockholder approval in connection with the proposed acquisition of the Company by Prologis, Inc. ("Prologis"), through a registration statement filed with the U.S. Securities and Exchange Commission (the "SEC"), that omits material facts necessary to make the statements therein not false or misleading.

2.　　On October 27, 2019, Liberty and Prologis issued a press release announcing that the two entities had entered into a definitive agreement (the "Merger Agreement"), by which a

newly created indirect wholly owned subsidiary of Liberty will merge with and into Liberty, with Liberty continuing as the surviving entity and as an indirect wholly owned subsidiary of Leaf Holdco Property Trust, a Maryland real estate investment trust and current wholly owned subsidiary of Liberty ("New Liberty Holdco"), which will be followed by the merger of New Liberty Holdco with and into Lambda REIT Acquisition LLC ("Prologis Merger Sub"), a wholly owned subsidiary of Prologis, with Prologis Merger Sub continuing as the surviving company (the "Proposed Transaction"). Under the terms of the agreement, each outstanding share of Liberty common stock issued and outstanding will be converted into the right to receive 0.675 of a newly issued share of Prologis common stock (the "Merger Consideration").

3.      On November 26, 2019, defendants issued materially incomplete and misleading disclosures in a Form S-4 Registration Statement (the "Registration Statement") filed with the SEC in connection with the Proposed Transaction. Specifically, the Registration Statement is materially deficient and misleading because, *inter alia*, it omits material information concerning: (i) the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction; and (ii) the financial advisors of the Company, Goldman Sachs & Co. LLC ("Goldman Sachs") and Citigroup Global Markets Inc. ("Citi") in conducting the valuation analyses in support of their fairness opinions. Without this information, Liberty stockholders cannot make an informed decision with respect to the Proposed Transaction.  The omission of such material information constitutes a violation of §§ 14(a) and 20(a) of the Exchange Act, as stockholders need such information in order to cast a properly informed vote on the Proposed Transaction.

4.      For these reasons, as set forth in detail herein, the Individual Defendants, and the Company, have violated federal securities laws. Accordingly, Plaintiff seeks to enjoin the

Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder

6.      Personal jurisdiction exists over each Defendant either because Defendant Liberty is incorporated and maintains operations in this District, or because each of the other Defendants is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Liberty is incorporated in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8.      Plaintiff is, and has been at all relevant times, the owner of shares of Liberty common stock.

9.      Defendant William P. Hankowsky ("Hankowsky") has served as a trustee of the Liberty since May 2003.

10.      Defendant Thomas C. DeLoach, Jr. ("DeLoach") has served as a trustee of Liberty since May 1999.

11.     Defendant Katherine E. Dietze ("Dietze") has served as a trustee of Liberty since January 2011.

12.     Defendant Antonio Fernandez ("Fernandez") has served as a trustee of Liberty since November 2014.

13.     Defendant Daniel P. Garton ("Garton") has served as a trustee of Liberty since December 2001.

14.     Defendant Robert G. Gifford ("Gifford") is, and has been at all relevant times, a trustee of Liberty.

15.     Defendant David L. Lingerfelt ("Lingerfelt") has served as a trustee of Liberty since May 1995.

16.     Defendant Marguerite Nader ("Nadar") has served as a trustee of Liberty since June 2017.

17.     Defendant Lawrence D. Raiman ("Raiman") joined Liberty Property Trust's board of trustees in April 2019.

18.     Defendant Fredric J. Tomczyk ("Tomczyk") joined Liberty Property Trust's board of trustees in November 2014.

19.     Defendants Hankowsky, DeLoach, Dietze, Fernandez, Garton, Gifford, Lingerfelt, Nadar, Raiman, and Tomczykare collectively referred to as "Individual Defendants" and/or the "Board."

20.     Defendant Liberty Property Trust, incorporated in Maryland, a Maryland real estate investment trust, through its controlling interest in Liberty Property Limited Partnership is a leader in commercial real estate, serving customers in the United States and United Kingdom, through the development, acquisition, ownership and management of superior logistics, warehouse,

manufacturing, and R&D facilities in key markets. The Company's common stock is traded on NYSE under the ticker symbol "LPT." The Company maintains its principal executive offices at 650 East Swedesford Road, Suite 400 Wayne, PA 19087.

21.     The Individual Defendants and Liberty are collectively referred to as "Defendants."

## OTHER RELEVANT ENTITIES

22.     Prologis, Inc. was formed in 1997 and is the global leader in logistics real estate with a focus on key markets in 19 countries on four continents. Prologis owns, manages and develops well-located, high-quality logistics facilities. Prologis' local teams actively manage its portfolio, which encompasses leasing and property management, capital deployment and opportunistic dispositions allowing it to recycle capital to self-fund its development and acquisition activities. The majority of Prologis' properties in the U.S. are wholly owned, while its properties outside the U.S. are generally held in co-investment ventures to mitigate Prologis' exposure to foreign currency movements. Prologis common stock is listed on the NYSE, trading under the symbol "PLD."

23.     Prologis, L.P. was formed in 1997 and is the primary operating subsidiary of Prologis. As of September 30, 2019, Prologis owned an approximate 97.22% common general partnership interest in Prologis OP and 100% of the preferred units in Prologis OP. As the sole general partner of Prologis OP, Prologis has complete responsibility and discretion in the day-to-day management and control of Prologis OP. Prologis only holds a de minimis amount of assets outside of Prologis OP.

## FURTHER SUBSTANTIVE ALLEGATIONS

**The Background of the Company & Merger**

24.     Liberty Property Trust, a Maryland real estate investment trust, through its controlling interest in Liberty Property Limited Partnership is a leader in commercial real estate,

serving customers in the United States and United Kingdom, through the development, acquisition, ownership and management of superior logistics, warehouse, manufacturing, and R&D facilities in key markets. As of September 30, 2019, Liberty owned interests in 580 properties in operation, comprised of approximately 111.7 million square feet, 25 properties under development, which when completed are expected to comprise approximately 5.2 million square feet, and three properties held for redevelopment or as value-added, comprising approximately 140,000 square feet, as well as approximately 1,700 acres of developable land.

25.     Liberty's Proposed Transaction with Prologis has long been of interest to both Prologis and Liberty. Hamid R. Moghadam, the Chief Executive Officer of Prologis, and William P. Hankowsky, Liberty's Chairman of the Board, President and Chief Executive Officer, held numerous informal talks over the past two years as the two executives explored a potential strategic transaction between the companies.

26.     Ultimately, it wasn't until September 18, 2019, that Mr. Hankowsky and Mr. Moghadam spoke directly by telephone concerning the formulation of the present transaction. During this discussion, Mr. Moghadam communicated a proposal of a stock-for-stock transaction valuing Liberty common shares at $60 per share, resulting in an implied exchange ratio of 0.69 shares of Prologis common stock for each Liberty common share based on Prologis' closing stock price of $86.44 on September 17, 2019, which would result in an implied premium of 16.9% to Liberty's share price based on the closing price of Liberty common shares of $51.34 on September 17, 2019. Mr. Moghadam and Mr. Hankowsky also discussed Mr. Moghadam's expectation some Liberty employees would be asked to continue working for the Combined Company.

27.     On September 20, 2019, the Liberty board convened telephonically to discuss Prologis' offer. In preparation for that meeting, the Liberty board requested that, before engaging

further with Prologis, representatives of Goldman Sachs and Citi contact "Party A," an investment firm active in the industrial property sector, to obtain by September 25, 2019 Party A's view on Liberty's valuation and to gauge its interest in a possible acquisition of Liberty. Promptly following the September 20, 2019 meeting, representatives of Goldman Sachs and Citi contacted representatives of Party A by telephone and requested that if Party A was potentially interested in an acquisition of Liberty, it provide a preliminary valuation of Liberty by September 25, 2019. On September 25, 2019, a representative of Party A called a representative from Goldman Sachs and, while not submitting a formal offer, indicated that any offer by Party A would likely be at the low end of a 10-15% premium range over the price of Liberty common shares, which closed at $50.93 on September 24, 2019.

28.     During a regularly scheduled meeting of the Liberty Board on September 26, 2019, members of Liberty's senior management and representatives from Goldman Sachs, Citi and Morgan Lewis, outside counsel to Liberty, met to discuss the proposed combination with Prologis based on Prologis' proposed exchange ratio. Following discussion, the Liberty board authorized senior management and Goldman Sachs and Citi to continue engaging in dialogue with Prologis regarding the potential transaction structured as a stock-for-stock merger of the two companies at a 0.7127 exchange ratio, which implied an approximately 19.7% premium to Liberty's share price based on the closing price of Liberty common shares of $51.38 on September 26, 2019, and an approximately 15% pro forma ownership of Liberty's shareholders in the Combined Company.

29.     To facilitate confidential discussions and the sharing of confidential information between the parties, the parties thereafter negotiated the terms of a non-disclosure agreement, which Prologis requested include an exclusivity provision in consideration of Prologis spending significant resources to complete due diligence and pursue the proposed transaction. On September

30, 2019, Liberty and Prologis entered into a non-disclosure agreement that included an exclusivity provision through October 29, 2019, as well as customary mutual standstill and confidentiality restrictions.

30.    Over the next month, the parties and their respective representatives continued to negotiate the terms of the merger agreement and the proposed transaction. On October 22, 2019, Mr. Moghadam contacted Mr. Hankowsky and informed him that Prologis was no longer willing to enter into a transaction at the exchange ratio of 0.7127. Mr. Moghadam indicated that Prologis remained interested in a transaction, but at an exchange ratio of 0.6739, which implied an approximately 21.7% premium to Liberty's share price based on the closing price of Liberty common shares of $50.29 on October 22, 2019 and an approximately 14% pro forma ownership of Liberty shareholders in the Combined Company.

31.    The following day, Mr. Hankowsky communicated that a deal with an exchange ratio within a range of 0.69 - 0.71 would likely be acceptable to Liberty. Shortly thereafter, Mr. Moghadam declined the Liberty counter offer and communicated that Prologis would be willing to proceed at an exchange ratio of 0.674.

32.    That same day, the Liberty board met telephonically to discuss the reduced exchange ratio. After a discussion regarding the revised Prologis offer, the Liberty board authorized the Liberty management team to continue pursuing a transaction with Prologis at an exchange ratio of no lower than 0.674, so long as it received assurances from Prologis that it would move expeditiously towards an agreed transaction without further revision to the proposed material terms.

33.    After the meeting, representatives from Citi and Goldman Sachs called Mr. Moghadam to discuss raising the exchange ratio and the potential for including an exchange ratio

collar, which would provide some protection to Liberty's shareholders in the event Prologis' stock price declined. Mr. Moghadam declined the proposal to include a collar structure but agreed to move forward based on an 0.675 exchange ratio, which implied an approximately 23.4% premium to Liberty's share price based on the closing price of Liberty common shares of $50.26 on October 23, 2019 and an approximately 14% pro forma ownership of Liberty shareholders in the Combined Company.

34.     With the proposed structure of the deal in place, the parties moved expeditiously to finalize the merger agreement.

35.     On October 27, 2019, the Liberty board held a telephonic special meeting with members of senior management of Liberty and representatives of Morgan Lewis, Goldman Sachs and Citi. During this meeting, representatives of Citi and Goldman Sachs delivered to the Liberty board their respective oral opinions that the exchange ratio pursuant to the merger agreement was fair, from a financial point of view, to the holders of Liberty common shares. Following these presentations and discussions, the Liberty board, by a unanimous vote (i) approved, determined and declared advisable the merger agreement and the transactions contemplated thereby, including the mergers, (ii) authorized and approved the execution, delivery and performance of the merger agreement and the mergers and declared that the mergers are advisable and in the best interests of Liberty, (iii) directed that the company mergers be submitted for consideration at a meeting of the Liberty shareholders, (iv) resolved to recommend that the shareholders of Liberty vote in favor of the company mergers and approved the inclusion of such recommendation in the proxy statement to be sent to shareholders in respect of the mergers.

36.     That same day, Liberty and Prologis executed and delivered the merger agreement and issued a joint press release publicly announcing the mergers and execution of the merger agreement.

**Proposed Transaction**

37.     In a press release dated October 27, 2019, Liberty announced that it had entered into a Merger Agreement with Prologis pursuant to which stockholders of Liberty will receive 0.675 shares of Prologis common stock for each share of Liberty common stock.

38.     The press release states in pertinent part:

SAN FRANCISCO and WAYNE, Pa., Oct. 27, 2019 /PRNewswire/ -- Prologis, Inc. (NYSE: PLD) and Liberty Property Trust (NYSE: LPT) today announced that the two companies have entered into a definitive merger agreement by which Prologis will acquire Liberty in an all-stock transaction, valued at approximately $12.6 billion, including the assumption of debt. The board of directors of Prologis and the board of trustees of Liberty have each unanimously approved the transaction.

"Liberty's logistics assets are highly complementary to our U.S. portfolio and this acquisition increases our holdings and growth potential in several key markets," said Prologis chairman and CEO Hamid R. Moghadam. "The strategic fit between the portfolios allows us to capture immediate cost and long-term revenue synergies."

The transaction deepens Prologis' presence in target markets such as Lehigh Valley, Chicago, Houston, Central PA, New Jersey and Southern California.

The acquisition on an owned and managed basis comprises:

- 107 million square foot logistics operating portfolio; 87 percent overlap with key markets
- 5.1 million square feet of logistics development in progress
- 1,684 acres of land for future logistics development with build-out potential of 19.7 million square feet
- 4.9 million square foot office operating and development portfolio

Prologis plans to dispose of approximately $3.5 billion of assets on a pro rata share basis. This includes $2.8 billion of non-strategic logistics properties and $700 million of office properties.

"Liberty and Prologis represent two of the finest teams of real estate professionals and two of the finest portfolios of industrial real estate ever assembled," said Bill Hankowsky, Liberty chairman and chief executive officer. "The joining of these two platforms at this moment, when industrial logistics has become so pivotal to the new economy, will further the industry's ability to support the nation's supply chain and enhance value creation for our combined shareholders. It is a testament to Liberty's outstanding teams of professionals, both present and past."

"Liberty's high-quality logistics real estate will strengthen our portfolio as well as our customer roster," said Prologis chief investment officer Eugene F. Reilly. "We are also excited about the caliber of talent at Liberty and expect a number of their employees to join us to help manage the portfolio and execute on capital deployment."

This transaction is anticipated to create immediate cost synergies of approximately $120 million from corporate general and administrative cost savings, operating leverage, lower interest expense and lease adjustments. Initially, this transaction is expected to increase annual core funds from operations* (Core FFO) per share by $0.10-$0.12. Upon stabilization of the acquired development assets, completion of the planned non-strategic asset sales and redeployment of the related proceeds, annual stabilized Core FFO per share is forecasted to increase by an additional $0.04 per share for a total of $0.14-$0.16.

Further, there are future synergies with the potential to generate approximately $60 million in annual savings, including $10 million from revenue synergies and $50 million from incremental development value creation.

"The execution of this transaction is further evidence of the strength of Prologis' balance sheet and will create significant additional capital from the future sale of the non-core assets," said Prologis chief financial officer Thomas S. Olinger. "The combination of these portfolios will drive incremental Core FFO growth and long-term shareholder value."

Under the terms of the agreement, Liberty shareholders will receive 0.675x of a Prologis share for each Liberty share they own. The transaction, which is currently expected to close in the first quarter of 2020, is subject to the approval of Liberty shareholders and other customary closing conditions.

**The Registration Statement Misleads Liberty Stockholders by Omitting Material Information**

39.    On November 26, 2019, Liberty and Prologis caused to be filed the Registration Statement with the SEC. As alleged below and elsewhere herein, the Registration Statement contains material misrepresentations and omissions of fact that must be cured to allow Liberty's

stockholders to render a properly informed decision with respect to the Proposed Transaction. Designed to convince shareholders to vote in favor of the Proposed Transaction, the Registration Statement is rendered misleading by the omission of critical information concerning the financial analyses performed by the Company's financial advisors, and other crucial issues. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to Liberty's stockholders.

40.     With respect to the financial projections disclosed in the Registration Statement, the Registration Statement fails to provide material information. Specifically, the Registration Statement provides projections for Liberty on a Standalone Basis that include non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) Adjusted EBITDA, (2) FFO, (3) FFO/Share, (4) AFFO, and (5) Unlevered Free Cash Flow, but fail to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures. In addition to these material omissions, the description in the Registration Statement of the financial advisors' respective fairness opinions and the underlying analyses omits key inputs and assumptions used by the financial advisors that underlie their respective analyses.

41.     With respect to Goldman Sachs' Implied Premia and Multiples Analysis, the Registration Statement fails to disclose the multiples and financial metrics for the companies observed by Goldman Sachs in its analysis.

42.     With respect to Goldman Sachs' Illustrative Discounted Cash Flow Analyses for Liberty, the Registration Statement fails to disclose: (i) earnings and asset assumptions for Liberty based on the Company projections; (ii) the range of terminal values; (iii) basis for applying a

EBITDA multiple range of 20.0x to 20.4x to the terminal value; (iv) the basis for selecting the discount rate range from 4.5% to 5.5%; (v) the basis for selecting the perpetuity growth rates ranging from 0.3% to 1.9%; (vi) an illustrative terminal value of non-stabilized assets in the terminal year based on the incremental stabilized net operating income; (vii) Liberty's net debt and preferred equity and non-controlling interests as of September 30, 2019; and (viii) the number of fully diluted outstanding shares of Liberty.

43.    With respect to Goldman Sachs' Illustrative Discounted Cash Flow Analyses for Prologis, the Registration Statement fails to disclose: (i) earnings and asset assumptions for Prologis based on its projections; (ii) the range of terminal values; (iii) basis for applying a EBITDA multiple range of 23.0x to 27.0x to the terminal value; (iv) the basis for selecting the discount rate range from 4.5% to 5.5%; (v) the basis for selecting the perpetuity growth rates ranging from 1.0% to 2.4%; (vi) an illustrative terminal value of non-stabilized assets in the terminal year based on the incremental stabilized net operating income; (vii) Prologis' net debt and preferred equity and non-controlling interests as of September 30, 2019; (viii) the number of fully diluted outstanding shares of Prologis.

44.    With respect to the Illustrative Implied Premia of Precedent REIT Transactions, the Registration Statement fails to disclose the multiples and financial metrics for the transactions observed by Goldman Sachs in its analysis.

45.    With respect to Citi's Discounted Cash Flow Analyses for Liberty, the Registration Statement fails to disclose: (i) the terminal value; (ii) basis for applying an Adjusted EBITDA multiple range of 18.8x to 22.8x; (iii) the basis for selecting the discount rate range from 5.72% to 6.52%; and (iv) an illustrative terminal value of non-stabilized assets in the terminal year based on the incremental stabilized net operating income.

46.    With respect to Citi's Discounted Cash Flow Analyses for Prologis, the Registration Statement fails to disclose: (i) the terminal value; (ii) basis for applying an Adjusted EBITDA multiple range of 21.1x to 26.1x; (iii) the basis for selecting the discount rate range from 6.44% to 7.38%; and (iv) an illustrative terminal value of non-stabilized assets in the terminal year based on the incremental stabilized net operating income.

47.    With respect to Citi's Combined Company DCF Analysis, the Registration Statement fails to disclose: (i) the terminal value of the Combined Company; (ii) basis for applying an Adjusted EBITDA multiple range of 22.1x to 26.1x; and (iii) the basis for selecting the discount rate range from 6.44% to 7.38%.

48.    When a bankers' endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses are crucial to a fair presentation of the material facts.    Furthermore, the disclosure of projected financial information provides stockholders with the best basis to project the future financial performance of a company and allows stockholders to understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.    This information is therefore material and must be disclosed if Liberty stockholders are to make a fully informed decision.    The omission of this information renders the statements made concerning the financial advisors' analyses and opinions materially misleading.

49.    Without such undisclosed information, Liberty stockholders cannot evaluate for themselves whether the financial analyses performed by the financial advisor were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.    In other

words, full disclosure of the omissions identified above is required in order to ensure that stockholders can evaluate the extent to which financial advisor's opinion and analyses should factor into their decision whether to tender their shares or pursue their appraisal rights. This information is necessary because, as the Registration Statement reveals, a large undisclosed portion of the approximately $20 million fees that Citi stands to receive for it's work is entirely contingent upon consummation of the transaction.

50.    The omission of this information renders certain portions of the Registration Statement false and/or materially misleading in contravention of the Exchange Act including, inter alia, the following sections of the Registration Statement: (i) "Opinions of Liberty's Financial Advisors" and "Certain Liberty Unaudited Prospective Financial Information."

51.    Defendants are, and have at all relevant times been, in full possession of the undisclosed facts, and have negligently, recklessly, knowingly and/or intentionally omitted this information from the Registration Statement.

52.    Without disclosure of the above referenced information, the Registration Statement violates SEC regulations and materially misleads Liberty stockholders. Accordingly, Plaintiff seeks, among other things, the following relief: (i) an injunction of the Proposed Transaction; (ii) rescission of the Proposed Transaction if it is consummated; and (iii) rescissory or other appropriate damages resulting from Defendants' misconduct.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 Promulgated Thereunder**

53.    Plaintiff repeats and realleges each allegation set forth herein.

54.    As detailed herein, Defendants disseminated the false and misleading Registration Statement specified above, which contained statements which, at the time and in the light of the circumstances under which they were made, were false and misleading with respect to material facts and which omitted to state material facts necessary in order to make the statements therein not false or misleading or necessary to correct earlier statements which had become false or misleading, in violation of Section 14(a) of the Exchange Act and SEC Rules promulgated thereunder, including SEC Rule 14a-9.

55.    Using the mails and by means and instrumentalities of interstate commerce and the facility of a national securities exchange, Defendants solicited and permitted the use of their names to solicit proxies or consents or authorizations in respect of the common stock of Liberty.

56.    By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The Registration Statement was prepared, reviewed, and/or disseminated by Defendants. The Registration Statement misrepresented and omitted material facts, including material information concerning the actual intrinsic value of the Company. Defendants were at least negligent in filing and disseminating the Registration Statement with these materially false and misleading statements and omissions. Defendants have also failed to correct the Registration Statement and the failure to update and correct false statements is also a violation of Section 14 of the Exchange Act and SEC Rules promulgated thereunder.

57.    The omissions, and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding whether to vote in favor of and tender their shares in the Proposed Transaction. A reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made

available in the Registration Statement and in other information reasonably available to stockholders.

58.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from immediate and irreparable injury, which defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

59.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

60.    The Individual Defendants acted as controlling persons of Liberty within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and directors of Liberty and their participation in and awareness of the Company's business and operations and their intimate knowledge of the materially false statements and omissions contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

61.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be false and misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

62.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations

as alleged herein, and exercised the same. Among other things, the Registration Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, they were directly involved in the making of that document.

63.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered – descriptions which had input from the Individual Defendants.

64.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in Plaintiff's favor and against Defendants as follows:

a)  declaring that the Registration Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

b)  preliminarily and permanently, enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

c)  to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

d)  awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

e)  granting Plaintiff such further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: December 16, 2019

**LEVI & KORSINSKY LLP**

*/s/ Donald J. Enright*

Donald J. Enright
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
Email: denright@zlk.com

*Attorneys for Plaintiff*